Brown and Others *v.* Budd.

Where two or more purchase an estate, and one pays the money, and the estate is conveyed to them both, the one who pays the money gains neither a lien nor a mortgage, because there is no contract for either; nor can it be construed as a resulting trust, as such a trust cannot arise at an after period. The only remedy he has is to file a bill for contribution.

A purchaser with notice may protect himself by purchasing the title of another *bona fide* purchaser for a valuable consideration without notice.

If a person who has notice sells to another who has no notice, and is a *bona fide* purchaser, for a valuable consideration, the latter may protect his title, although it was affected with the equity arising from notice in the hands of the person from whom he derived it.

As a general rule, inadequacy of consideration alone is not sufficient cause for impeaching a contract.

Where an instrument has been recorded, the recording of which was not required by statute, the record is no legal notice of its contents.

*Tuesday,
February 11,
1851.*

ERROR to the *Floyd* Circuit Court.

PERKINS, J.—In *March*, 1847, *Gilbert Budd* filed his bill in chancery in the *Floyd* Circuit Court against *John Brown* and others, alleging, that on the 1st day of *May*, 1841, he and one *James Collins*, jun., purchased of one *Henry Collins* part of out lot, letter C, in *New Albany*, and agreed to pay therefor, 4,500 dollars, by paying debts to divers persons which said *Henry Collins* was bound to pay, to-wit, *James Durnell* 296 dollars and 33 cents; *Frederick Hanger* 126 dollars and 60 cents; *Jacob Lafollett* 634 dollars and 84 cents; *Josiah Lamb* 208 dollars and 79 cents; *John Flicknor* 203 dollars and 25 cents; *James Hickman* 119 dollars and 95 cents; *Philip Cook* 117 dollars and 50 cents; the *Branch Bank* at *New Albany* and the *New Albany Insurance Co.* 609 dollars; a judgment in favor of *George B. Spurrier* for 312 dollars and 12 cents; one in favor of *St. Clair Young* for 444 dollars and 87 cents; one in favor of *James Collins*, jun., for 422 dollars and 15 cents; and a debt due *Gilbert Budd* of 1,004 dollars and 58 cents; that they executed to said several persons, except said *Collins* and *Budd*, their joint and several promissory notes for the payment of said several sums of money, five years after the date of said notes, and thereupon received a deed for the property and entered into

possession. They also executed the following agree-
ment:

" Article of agreement made and entered into this first
day of *May*, 1841, between *James Collins*, jun., and *Gilbert
Budd*, both of *Floyd* county; *Indiana*, witnesses, that
whereas the said *Collins* and *Budd* have this day pur-
chased that part of out lot, letter C, between upper *Spring*
and upper *Elm* streets, in the city of *New Albany*, in the
county aforesaid, and bounded as follows, to-wit, [bound-
aries omitted,] for the sum of 4,500 dollars, on which pur-
chase said *Collins* has this day paid 422 dollars and 15
cents, which sum the said *Budd* agrees to equalize by pay-
ing judgments against said house as they may become
due and payable, adding interest on such payment when
made to make it equal to the interest on the sum now
paid by said *Collins*. It is also further agreed that after
such equalization, each of them is to advance money for
payment of any debt they have assumed against said pro-
perty in equal portions; and in all cases where one ad-
vances more than the other, the one advancing most holds
a lien on the other's interest in said house for such ad-
vancement. It is also agreed between the parties that
the rents of the tenements on said lot are to be received
by *H. Collins* and applied to debts in bank and the insu-
rance office until the same are paid out; and if the same
are not sufficient therefor, said parties are to advance to
him a sufficient sum in equal portions. It is also agreed
that said *Budd* has a debt of 1,004 dollars and 58 cents
against said house and lot, which is to remain three years
without interest, at the end of which term the parties are
to settle, and if one holds more of the notes given for
said property than the other, the overplus is to bear in-
terest until equalized by the other."

The foregoing instrument was under seal.

The bill further alleges that in 1846 *Hanger, Lafollett,
Cook, Hickman, Flicknor*, and *Durnell* obtained judgments
on their notes against said *Budd* and *Collins*, and being
about to take out executions, and said *Collins* being in-
solvent, said *Budd*, plaintiff, was compelled to, and did, pay

Nov. Term,
1850.

Brown
v.
Budd.

off said judgments; and that, on the first day of *January*, 1846, said *Budd* paid to the bank and insurance office, and to *St. Clair Young* and *George B. Spurrier*, 1,130 dollars, leaving his, said *Budd's*, own claim of 1,004 dollars and 58 cents still unpaid. .

The bill further alleges that on the 16th day of *August*, 1845, the sheriff of *Floyd* county, by virtue of several executions in his hands against said *James Collins*, jun., and others, sold the interest of said *Collins* in said lot to one *John Brown*, who had notice of the lien of said *Budd*, and that said *Brown* has subsequently conveyed to others, having like notice. The bill prays that it may be decreed, on the final hearing, " that the undivided half of said property which belonged to said *James Collins*, jun., on said first day of *May*, 1841, be sold to pay to your orator [said *Budd*] the said sum of two thousand dollars, and compel said occupants to deliver possession thereof to the purchaser," &c. *John Brown*, who purchased the lot at sheriff's sale, made default. *Thomas L. Smith*, another of the defendants, and the grantee of said *Brown* to an undivided half of his purchase, also made default. *John Nicholson*, a defendant, and the grantee of the remaining undivided half of said *Brown's* purchase, answered. *Louisa F. Kent*, a defendant, and the grantee of said *Smith*, also answered jointly with her husband, *Phineas M. Kent*.

Decree below for the plaintiff.

There was evidence showing that *Budd*, the plaintiff, had paid a larger amount towards the purchase of the property than had *Collins*, his co-purchaser, and the question is, had he a lien on the property for the excess thus paid by him over and above the amount paid by *Collins?* The simple fact of his paying such excess gave him no lien. 2 Spence Eq. Jur. 803.—Sug. V. & P. 902. The article of agreement between *Budd* and *Collins* stipulating for a lien, created no legal one, for it conveyed no interest in the property. If it created an equitable one, still, a sale of the legal title to an innocent *bona fide* purchaser would divest it. In this case *Brown* was the pur-

chaser at the sheriff's sale, and it is contended that he had notice of the lien, having been informed of it at the said sale. We are not satisfied, from the evidence, that notice of *Budd's* equity was given to any one at that sale; (see *Foust* v. *Moorman* in this Court, (1) as to what constitutes notice); but before the filing of this bill *Brown* had conveyed the lot to *Nicholson* and *Smith* and received pay for it, and *Smith* had sold and conveyed to *Kent* and received the consideration. Hence, admitting *Brown* to have had notice, still, if *Nicholson* and *Kent* had not, and they are otherwise *bona fide* purchasers, they will hold clear of the lien. 1 Story's Eq. Jur. p. 438. There is no pretence that *Kent* had notice, and there is no evidence that *Nicholson* had. One witness testified that he saw him at the court-house once on the day the sheriff's sale took place; but he says there was a large collection of people there; *Nicholson* was not a bidder at the sale, nor is it stated that he was present when any notice of any lien was given, nor that he knew of any. This surely does not bring home notice to him; and notice is denied in the answers. No ground remains on which an attempt can be made to sustain the decree below, except that of inadequacy of consideration, and, indeed, no attempt has been made here to sustain it on that ground. As a general rule inadequacy of consideration alone is not sufficient cause for impeaching a contract. Chit. on Cont. 31, 684.—1 Story Eq. Jur. p. 266. In this case one or two witnesses value the property at 1,800 and 2,000 dollars. It sold at sheriff's sale for 400 dollars. *Brown* sold to *Smith* and *Nicholson* for the same price, and *Smith* sold his half to *Kent* for 250 dollars. There is not a circumstance proved, or attempted to be proved, aside from the fact of the consideration, tending to show that the purchases were not entirely *bona fide;* and if, as was testified in the case by Mr. *Crawford*, the property was incumbered to a large amount by mortgages and judgments, we cannot say that the consideration was inadequate even.

It should be remembered that the above mentioned agreement between *Budd* and *Collins*, was, in 1845, ac-

knowledged and recorded, but not being an instrument required by statute to be recorded, the record of it was no legal notice of its contents.  *Caldwell* v. *Williams et al.* in this Court (2).

*Per Curiam.*—The decree is reversed with costs.  Cause remanded, &c. (3.)

> *R. Crawford*, for the plaintiffs.
> *H. P. Thornton*, for the defendants.

(1) See *ante*, p. 17.
(2) See 1 Carter's Ind. R. 405.
(3) SMITH, J., was absent.