Kidder *v.* Biddle *et al.*

Filed November 26, 1895.

No. 1,622.

KIDDER *v.* BIDDLE ET AL.

ACTION.—*Conversion.—Money Had and Received.*—An action, either for conversion, or for money had and received, may be brought against one to whom the money is sent, with directions to pay a particular debt due from the sender to a third party, where he in disregard of such direction converts the money to the use of some one else.

CONVERSION.—*Misapplying Proceeds of Accepted Draft.—Corporation.*—The president of a corporation who discounts accepted draft, sent to the corporation with an express direction that it shall be used to discharge a note of the corporation, on which the sender is an indorser, and uses the proceeds of the draft in paying the employees of the corporation, is guilty of conversion, even though such sender was indebted to the corporation in excess of the amount of the draft.

Dissenting opinion, ROSS, J.

From the Vigo Circuit Court.

*G. A. Knight* and *Royse & Walker*, for appellant.

*C. F. McNutt, J. G. McNutt* and *F. A. McNutt*, for appellees.

DAVIS, J.—The facts out of which this controversy arises are as follows:

On January 4, 1890, the Sandford Fork & Tool Company, by its then president, Robert Nixon, executed to appellees its note, of which the following is a copy, to-wit:

"$1,935.20.　　TERRE HAUTE, IND., Jan. 4, 1890.

"Four months after date, I promise to pay to the order. of C. M. Biddle & Co., nineteen hundred and thirty-five and $\frac{20}{100}$ dollars, at National State Bank of Terre Haute, Ind. For value received without any relief whatever from valuation or appraisement laws, with eight per cent. interest from maturity until paid, and attorney's fees.

　　[Signed]　　　　SANDFORD FORK & TOOL CO.,
　　　　　　　　　　　　ROBERT NIXON, President."

Appellees, before its maturity, negotiated this note in bank and endorsed it.

The Sandford Fork & Tool Co., shortly before said note matured, discovered that it would be unable to meet said note at maturity, and it wrote a letter by said Nixon, who was then superintendent of the Sandford Fork & Tool Co. (the appellant in the meantime having been elected president of said company), requesting appellees· to send said Sandford Fork & Tool Co. their acceptance for $1,935.20 to be discounted by said Tool Company, and the proceeds to be used by said Tool Company to take up said note.

This letter is as follows:

　　　　　　　　"TERRE HAUTE, IND., April 30, 1890. ·
"MESSRS. C. M. BIDDLE & Co., Philadelphia Pa.:

"GENTLEMEN—Kindly send us your acceptance for $1,935.20 to take up note for like amount due May 7th. Kindly let us have it dated a few days ahead of the other, so we can get it discounted out of town, if necessary.

　　　　　　　Yours very truly,
　　[Signed]　　　　SANDFORD FORK & TOOL CO.,
　　　　　　　　　　　　　　　　N."

The appellees answered said letter and inclosed their

acceptance to the Sandford Fork & Tool Co., which letter and acceptance are as follows: .

"PHILADELPHIA, PA., May 3, 1890.

"To SANDFORD FORK & TOOL Co., Terre Haute, Ind. :

"GENTLEMEN—Please find enclosed acceptance for $1,935.20, per your request of 30th. Kindly send us your note for like amount and date, and oblige,

Respectfully,

[ Signed ]                                    C. M. BIDDLE & Co."

The acceptance is in words and figures, as follows, to-wit :

"$1,935.20.            TERRE HAUTE, IND., May 3, 1890.

"Four months after date, pay to the order of Sandford Fork & Tool Co., nineteen hundred and thirty-five and $\frac{20}{100}$ dollars, value received and charge the same to account of            SANDFORD FORK & TOOL Co.,

Per WILLARD KIDDER, Pres't.

"To CLEMENT M. BIDDLE & Co.,

168 Church Street,

New York City."

"Accepted, payable at Imp. & Trader's Bank, N. Y. C. M. Biddle & Co."

The appellees had a branch office in New York City and branch offices in several other cities, but their principal office and place of business were in the city of Philadelphia, Pa.

The letter containing the above acceptance was received by the Sandford Fork & Tool Co., and opened by Emory Gibbs, the book keeper of the Sandford Fork & Tool Co., and the acceptance was by him delivered to appellant, as president of said company, on the street, in Terre Haute, with a number of other bills, checks, and drafts belonging to said Tool Company. Appellant took said acceptance to the First National Bank of Terre Haute, Ind., and procured it to be discounted, he indorsing it

as follows: "Sandford Fork & Tool Co., per Willard Kidder, President," and obtained thereon the sum of $1,883.60, with which money so obtained he paid the wages due the employes of the Sandford Fork & Tool Co. Appellant did not use one dollar of it for his own personal or individual use or benefit.

No part of this money so obtained on the acceptance was used to pay the note of $1,935.20, dated January 4, 1890, and subsequently appellees paid said note and acceptance. The Sandford Fork & Tool Co. shortly thereafter, to-wit, on·or about the ...... day of May, 1890, passed into the hands of a receiver.

It clearly appears that appellees placed the acceptance in the hands of the Sandford Fork & Tool Co. for the sole and express purpose of paying the note. The acceptance was not a loan for consumption by said corporation, but it was placed in the hands of the corporation to use in extinguishing the note on which appellees were liable.

It is not claimed that the appellant had any actual knowledge of the correspondence hereinbefore referred to, between the corporation and the appellees. Neither does it appear that he knew of the purpose for which the acceptance was sent by the appellees to said corporation. Instead, however, of using the money realized on the acceptance to the payment of the January note, the corporation, through the appellant, used the money to pay off the employes. The note was suffered to be protested for nonpayment, and ultimately·was paid by the appellees, who 'were later, and after it had become due in like manner, obliged to pay the draft. The Sandford Fork and Tool Company never sent appellees "the note of the date and amount" of the acceptance. This action was instituted in the court below by appellees against appellant to recover the money realized on

the acceptance.   A trial by the court resulted in a judgment for the amount so received on the acceptance, with interest, against the appellant.

The errors assigned are :

The overruling of appellant's demurrer to the several paragraphs of the complaint and the overruling of his motion for a new trial.

The first paragraph sets out the facts in detail substantially as hereinbefore stated.   It is urged that it fails to aver ownership by appellees of the acceptance or the money which was obtained on it by discounting it. The contention is that the facts clearly show that the relation of debtor and creditor was created between appellees and the corporation, and that the use of the money obtained by discounting said acceptance to other purposes than taking up the note constituted simply and only a breach of contract, for which a right of action for money had and received might have been maintained by appellees against the corporation.

The second paragraph is for. money had and received.

The third paragraph is for conversion.   It is insisted that the demurrer should have been sustained to the third paragraph, for the reason that it does not aver that appellees had a general or special property in the money therein referred to, or that they were entitled to the possession thereof at the time of the alleged conversion.   As to the objections mentioned, the first and third paragraphs of the complaint are sufficient.   It clearly appears in the first paragraph, that appellees furnished its acceptance to the corporation for the express purpose of paying the note, and in the third paragraph it is expressly averred that appellees furnished the appellant the money for that purpose.

It is also urged that there is a misjoinder of causes of action.   Assuming this position to be true, a reversal

would not necessarily result. The facts hereinbefore set out are admissible under each paragraph, and the evidence, if sufficient to establish the cause of action in any one paragraph, would suffice to establish those in the others.

The general rule is that where one sends money to another with directions that he shall pay a particular debt due from the sender to a third party, and that direction is disregarded, and the money is converted to his own use by the receiver, or to the use of some one else, the sender can sue for conversion, or for money had and received to his use. *Ferguson* v. *Dunn's Admr.*, 28 Ind., p. 58; *Terrell* v. *Butterfield, Exr.*, 92 Ind., p. 1.

The serious and meritorious question is whether the facts alleged in the first paragraph of the complaint are sufficient to constitute a cause of action against the appellant for conversion.

It seems clear that the acceptance was by the appellant, acting as president of the corporation, converted to the use of said corporation in defiance of appellees' rights. The fact that appellant was acting for the corporation, and that he may have been ignorant of the fact that the acceptance was placed in the hands of the corporation for use in paying the note, cannot avail him.

*Shearer* v. *Evans*, 89 Ind. 400, 404; *Alexander* v. *Swackhamer*, 105 Ind. 81, 86, 87; *McPheters* v. *Page*, 22 Atl. Rep. 101; *Waverly, etc., Co.* v. *St. Louis, etc., Co.*, 20 S. W. Rep. 566.

In *Loverty* v. *Snethen*, 68 N. Y. 522, the court says: "The plaintiff was entitled to the absolute dominion over the property as owner. He had the right to part with so much of that dominion as he pleased." So in this case appellees were entitled to the absolute dominion over the acceptance. They parted with that dominion

to the extent that it was placed in the possession of the corporation for the express purpose of extinguishing the note. The use of it for any other purpose was an unlawful interference with the appellees' property, which resulted in loss to the appellees, and such disposition, under the circumstances of this case, constituted a conversion.

In the case last cited the court said : "The question of good faith is not involved. A wrongful intent is not an essential element of the conversion. It is sufficient if the owner has been deprived of his property by the act of another assuming an unauthorized dominion and control over it."

In this case, as we have seen, the acceptance was sent by appellee, by mail, to the corporation, to discharge the January note on which appellees were liable as indorsers, and the appellant, as president of said corporation, discounted the acceptance and used the proceeds thereof in paying its employes. This act of appellant was a conversion whether he had actual knowledge of the correspondence between the parties or not. As president of the corporation he ought to have known all the facts. If this were a case where a party could be charged only when he had notice of the facts, we are not certain that appellant would not be liable, upon the principle that he should be held to have such knowledge as he might have secured by such diligence as he ought to have exercised. In our opinion there was no error in overruling the demurrer to each paragraph of the complaint.

What we have heretofore said in the course of this opinion disposes of all the questions arising on the motion for a new trial except one.

On the trial the appellant offered to prove that appellees were indebted to the corporation in a sum in excess of the amount of the acceptance, and that the face

amount of the acceptance was entered as a credit on their account. There was no error in excluding this evidence. The rule, as we understand it, is, that where money or other things is placed in the hands of one person by another for a particular object, as to discharge a particular debt, the application of it to a debt due from the latter to the former is of itself a conversion. *Kelley* v. *Archer*, 48 Barb. 68; *Northrup* v. *McGill*, 27 · Mich. 234; *Bank of U. S.* v. *Macalester*, 9 Pa. St. 475; *Boil* v. *Simms*, 60 Ind. 162.

Who received the benefit of the January note does not clearly appear. Counsel for appellees say that said corporation desired to borrow the credit of the firm of the appellees, and that to this end the note was executed by the corporation to the appellees, and by them negotiated and endorsed. Whether the appellees or the corporation received the benefit of the note originally is, perhaps, not material. It is not controverted that the corporation was primarily bound for its payment. When the note became due, the corporation was not prepared to pay the obligation. At the request of the corporation the appellees sent their acceptance to the corporation for the sole and express purpose of paying the note. The appellant, as president of the corporation, by an act subversive of the rights of the appellees, instead of using the acceptance to pay the note, used it to pay the employes of the corporation. In a sense, the right of the possession of the acceptance was in the corporation, and the appellant, in what he did, acted as the agent of the corporation, but in doing this the express instructions of the appellees in regard to the use which was to be made of the acceptance were disregarded, and if the appellant was ignorant of the instructions it was because he was not familiar with the business of the corporation, in the transaction of which he was engaged. The

appellees were not asked to execute an acceptance to be used by the corporation in such manner as might best suit its interest, but it clearly appears, as we have seen, that the acceptance was executed by the appellees and placed in the hands of said corporation for an express purpose, and such express purpose was the payment of a note on which appellees were secondarily liable as endorsers for the corporation. Neither the corporation nor its president had any right to convert the acceptance to any other use. The president was the executive officer of the corporation, and the fact that he was acting as president of the corporation when he secured the money on the acceptance and applied it to the payment of the employes is no reason why he should not account to the appellees for the loss sustained by them on account of such conversion. If the corporation had paid the note, the appellees would only have been liable to the corporation for whatever was due on the account between them, which is said to have exceeded the amount of the acceptance, but how much is not stated. On account of the failure of the corporation to pay the note the appellees were compelled to pay it, and in addition thereto were compelled to pay a like amount on the acceptance, and if they recover in this action are yet liable to the corporation on the account.

If the acceptance had not been executed, the corporation would have owed the note, and the appellees would have owed the account. Whether the appellees on payment of the note could have used it as an offset against the account we need not determine. These suggestions are made for the purpose of showing in what manner the appellees may have been injured on account of the failure to apply the acceptance in discharge of the note. As between the appellees and the appellant, we are not able to see any good reason why he should not account

to the appellees for the amount realized by the conversion.    It is true, he did not convert the money to his own individual use, but he did by his own act convert it to the use of the corporation.    The appellees gave explicit instructions as to what should be done with the acceptance, and if he was not advised of such instructions his ignorance was not occasioned by anything said or done by the appellees, but was the result of the failure on his part to familiarize himself with the business in the transaction of which he was engaged.    He says he knew nothing of the transactions between the appellees and the corporation.    He did not know that the appellees were indebted to the corporation on account.    Neither does it appear that he knew of the existence of the note executed by the corporation to the appellees.

We have carefully read the entire record, and also the able and exhaustive briefs of the learned counsel for the respective parties, and we are of the opinion there is no reversible error in the record.

Judgment affirmed.

Filed November 26, 1895.

### DISSENTING OPINION.

. Ross, J.—Under the facts set out in the majority opinion, the appellant, as president of the Sandford Fork and Tool Company, indorsed the acceptance and had it discounted, the proceeds being received and used by the company.    How, under these facts, appellant can be held personally liable for conversion I confess I am unable to comprehend.

The acceptance was sent by the appellees to the Sandford Fork and Tool Company to be used by it in raising money with which to pay an outstanding obligation; it was received by the company, negotiated by it, and the proceeds received and used by it.    True, being a corporation, and having no physical existence, it could act

only by and through its officers and agents; and the appellant being its president, physically did for it what it could only do by and through its officers and agents. The appellant, Willard Kidder, as an individual had nothing to do with this transaction any more than if no such person existed. What was done was done, not by Willard Kidder, but by the Sanford Fork and Tool Company.

The first paragraph of the complaint proceeds upon the theory and seeks to recover for a conversion. In such an action the plaintiff must allege that he is the owner of the property or entitled to its possession at the time of its conversion, and that the defendant converted it to his own use or the use of another. *Swope* v. *Paul*, 4 Ind. App. 463; *Hunter* v. *Cronkhite*, 9 Ind. App. 470; *Day* v. *Watts*, 92 Ind. 442; *Kehr* v. *Hall*, 117 Ind. 405.

"Conversion consists as a tort, either in the appropriation of the personal property of another to the party's own use and benefit, or in its destruction, or in exercising dominion over it, in exclusion and defiance of the rights of the owner or lawful possessor, or in withholding it from his possession under a claim and title inconsistent with the owner's." 4 Am. and Eng. Encyc. of Law, page 108, and cases cited.

The facts alleged in the first paragraph of the complaint show that the appellees at the request of the Sandford Fork and Tool Company sent to it their acceptance for $1,935.20, which said company agreed to have discounted, and with the proceeds pay a note then due, which had previously been executed by the company to the appellees, and by them discounted and endorsed. That the Sandford Fork and Tool Company received the acceptance, and after it was endorsed by the appellant, as president of the company, it was discounted

in bank and the proceeds applied to the payment of the company's employes instead of to the payment of the obligation previously given by the company to appellees. That when the appellees sent the acceptance to the company they requested that the company send them its note for the amount of the acceptance.

It is evident from these facts, that the Sandford Fork and Tool Company came rightfully into the possession of the acceptance, with power to convert it into money. That while the appellees expected the company to use the money realized on the acceptance in paying off the obligation previously executed by it to them, they at the same time expected the company to give them its note for the amount of the acceptance.

As heretofore stated, in order that a right of recovery exists in favor of the appellees, it was necessary for them to allege and prove that at the time of the conversion they had a general or special property in the thing converted, and had or were entitled to possession thereof.

The first paragraph does not, as I view it, seek to charge appellant with the conversion of the acceptance, for the facts alleged not only show that they did not have possession of it, but affirmatively and conclusively show that they were not entitled to its possession; but it proceeds upon the theory that appellant misapplied the proceeds received from discounting the acceptance, in which proceeds they claimed a special property for the reason that such proceeds were to be applied in a manner beneficial to appellees. Upon that theory, therefore, will I consider this paragraph.

If it be conceded that the appellees had a special property-interest in the money received by the Sandford Fork and Tool Company in discounting the acceptance, were they entitled to the possession of it or was such right of possession in the Sandford Fork and Tool Com-

pany? I think there is but one answer to the question, namely : that the Sandford Fork and Tool Company had possession, and was entitled to the exclusive possession of it.

Again, the obligation to be paid was primarily the obligation of the Sandford Fork and Tool Company, and secondarily the obligation of the appellees, and the acceptance primarily the obligation of appellees and secondarily the obligation of the Sandford Fork and Tool Company; by the negotiation of the latter money was raised to liquidate the former, and the Sandford Fork and Tool Company was empowered to act for both parties in the transaction. Without any agreement between the parties, the money received in discounting the acceptance was as much the property of the Sandford Fork and Tool Company as it was the property of the appellees. *Quære:* Can one of two joint owners of property, he being rightfully entitled to and in possession thereof, be guilty of conversion, if he fail to use the same in a manner directed by his joint owner, who is not in possession and has no right to the possession thereof?

Where the plaintiff, seeking to recover for a conversion, neither owned nor was entitled to the possession of the property alleged to have been converted, this court held that a recovery could not be had. *Hunter* v. *Cronkhite, supra.*

The majority opinion in this case proceeds upon the assumption, if I gather its meaning correctly, that the acceptance and the proceeds therefrom were the property of the appellees, and that the Sandford Fork and Tool Company was their special agent for a special purpose, and that if it misapplied the funds received on the acceptance, it was liable for conversion, and that the appellant, being the agent of the Sandford Fork and Tool

Company, who acted for it in misapplying the money, was also guilty of conversion.

The law seems to be well settled that where one acts for another in doing the things which constitute a conversion by the principal, the agent is also guilty of conversion, and may be made to answer therefor to the rightful owner the same as his principal. *Shearer* v. *Evans*, 89 Ind. 400; *Alexander* v. *Swackhamer*, 105 Ind. 81; *Moore* v. *Shields*, 121 Ind. 267.

In this case the Sandford Fork and Tool Company not only had possession of the acceptance rightfully, but the proceeds from it were rightfully in the company's possession. If the money was misapplied, such misapplication was not a conversion, but rather a fraud. The money received by discounting the acceptance was not the property of the appellees; neither had they any right to its possession nor control over it. The acceptance was not sent to the Sandford Fork and Tool Company to be negotiated by it and the proceeds to be placed to appellees' credit, or to be used for their benefit, other than that they would be released as endorsers by the payment of the company's obligation which they had endorsed.

"If a party, authorized by the holder of a bill of exchange to get it discounted, and to apply the proceeds in a particular way, does get it discounted, but misapplies any part of the proceeds, he cannot be sued in trover for the bill, but must be sued for money had and received." *Palmer* v. *Jarmain*, 2 M. and W. *282.

"Where the money was delivered to the defendant for a particular purpose, to which he refused to apply it, he cannot apply it to any other, but it may be recovered back by the depositor, under the count for money had and received." 2 Greenl. Ev., section 119.

In *Conaughty* v. *Nichols*, 42 N. Y. 83, "the plaintiff

alleged in his complaint, and proved upon the trial, among other facts, that during the months of December, 1860, and January, 1861, the plaintiffs, who resided in Saratoga county, consigned to the defendants, who were commission merchants, doing business in the city of New York, a quantity of dried fruit and butter, to be sold by the defendants, and the net proceeds to be remitted to the plaintiff; that the defendants received and sold the said fruit and butter," and the proceeds, after the payment of their expenses, they omitted and refused to pay to the plaintiff. The complaint contains the following allegation : "*And have converted the same to their own use* to the damage of plaintiff," etc.

Upon these facts the court held that the action was one *ex contractu* and not *ex delicto*. That the words : "*And have converted the same to their own use*" in the complaint were mere *surplusage*, and that the action was not for a conversion, but for money had and received.

"A complaint which alleges a joint agreement by the defendants to deliver up specified securities, demand therefor, and that the defendants wrongfully refused to deliver them, and have wrongfully disposed of and converted them to their own use, to the great damage of the plaintiff, and praying judgment for the value of the securities, with interest, as the damages sustained by the plaintiff by means of the premises, states a cause of action on contract, and not *ex delicto*.

"The allegation of a wrongful refusal by the defendants to deliver the securities and a wrongful disposition and conversion thereof by them to their own use, must be construed as an averment of a breach of the agreement, and not as the gist of the action." *Austin, Rec.*, v. *Rawdon*, 44 N. Y. 63.

In *Ferguson* v. *Dunn's Admr.*, 28 Ind. 58, the court

after giving the facts which were that : "Dunn, in his lifetime, remitted to Mrs. Furgeson a sum of money, with directions to loan it. The latter failed to loan the money, but used it herself," says : "The money was sent to Mrs. Furgeson by Dunn for a particular purpose to which she refused to apply it, and converted it to her own use. The action for money had and received lies in such a case."

From these authorities it appears that even though the money received on the acceptance was the property of the appellees and was in the possession of the Sandford Fork and Tool Company, as their agent to be used for a particular purpose, its misapplication would not entitle appellees to recover for a conversion which sounds in tort, but their only remedy would be to seek a recovery for money had and received. If there are any authorities to sustain a different doctrine I have not been able to find them.

I think the facts alleged in this paragraph of the complaint show that the acceptance sent by the appellees to Sandford Fork and Tool Company was nothing more nor less than a loan, for accompanying the acceptance was a letter in which appellees said : "Please find enclosed acceptance for $1,933.20 per your request of 30th. Kindly send us your note for like amount and date."

This request of the appellees that the Sandford Fork and Tool Company give them its note for the acceptance, shows not only the intention of appellees to assist the company by loaning it their credit, but stamps the transaction as a loan made, which was to be repaid in the future to appellees by the Sandford Fork and Tool Company.

These are the facts shown by the evidence. I am of the opinion, therefore, that the first paragraph of the complaint does not state a cause of action for conversion,

and that under the facts proven there could be no recovery against appellant upon any theory.

For these reasons I think the judgment should be reversed.

Filed November 26, 1895.