## CHICAGO, INDIANAPOLIS AND LOUISVILLE RAILWAY CO. *v.* POPE.

[No. 14,756. Filed January 24, 1934. Rehearing denied June 30, 1934. Transfer denied October 2, 1934.]

*W. L. Taylor, B. G. Stockhouse, C. C. Hine,* and *Cope J. Hanley,* for appellant.

*Frank E. Gilkison, Frank B. Jaqua, Sumner W. Haynes*, and *Byron G. Jenkins*, for appellee.

DUDINE, J.—This is an action by appellant against appellee for conversion of coal.

The complaint alleged that appellee was the owner of a farm abutting appellant's right of way; that appellant was the owner and in possession of the coal; and that by reason of a wreck on said right of way at a point adjoining appellee's farm, said coal was thrown on appellee's adjoining land, and that appellee unlawfully and wrongfully took and converted said coal to his own use "refusing to allow plaintiff (appellant) to remove" said coal.

To this complaint appellee filed an answer of general denial, and an answer in the nature of a cross-complaint. It will serve no good purpose to show the allegations of said second paragraph of answer.

The cause was tried by a jury which rendered a general verdict for appellee. Appellant filed a motion for new trial, the grounds of which were that the verdict was not sustained by sufficient evidence and that the verdict was contrary to law. Said motion was overruled and judgment was rendered upon the verdict. Appellant appealed, assigning as a sole error that the court erred in overruling said motion for new trial.

The evidence shows without dispute that the coal could not be removed without going across appellee's land, that appellant's agents asked appellee's permission to go on his land and remove the coal, but appellee refused to grant such permission unless appellant would pay him thirty-five dollars; that a Mr. Padgett had been authorized by appellant to remove said coal, and that Padgett did remove some of it, but appellee forbade him to remove the balance.

Appellant contends that said facts constitute conversion as a matter of law.

This court said, however, in *First National Bank* v.

*Ransford* (1913), 55 Ind. App. 663, 666, 104 N. E. 604, "The essence of every conversion is the wrongful invasion of the right to, and absolute dominion over, property owned, or controlled, by the person deprived thereof, or of its use and benefit . . ."

The case of *Nichols* v. *Newsom* (1813), 6 N. C. 302, (quoting from the official report) :

". . . was an action of trover for a quantity of lightwood set as a tar-kiln of the Defendant's land, but not banked or turfed. Upon the trial it appeared, that a judgment had been obtained against the Defendant, on which an execution was issued and levied on the said lightwood, which was duly advertised and sold and struck off to the Plaintiff as the highest bidder. The Plaintiff afterwards applied to the Defendant for liberty to bank, turf, and burn the kiln as it then stood, which liberty the Defendant refused to grant. The Plaintiff then demanded the lightwood, and proposed to bring his team and cart it off the Defendant's land; hereupon the Defendant replied, if the Plaintiff came on his premises for that purpose, he would sue him. . . ."

Newsom brought suit for conversion, which was tried by a jury, who found that defendant was guilty of conversion. The sole question on appeal was whether or not the conduct of defendant constituted conversion.

In a dissenting opinion Judge Seawall said, p. 303:

" 'What is a conversion?' Conversion, in legal acceptation, means the wrongfully turning to one's use the personal goods of another, or doing some wrongful act inconsistent with or in opposition to the right of the owner. It is a malfeasance, and the plea to the action is 'not guilty.' This malfeasance, like all others, is capable of proof in divers ways, as by the confession of Defendant, or when called upon to surrender the property, his refusal affords a presumption that he has converted it to his own use; for otherwise he would not refuse. But this presumption, like all others, vanishes when the contrary appears.

"In the present case, the Plaintiff calls upon the Defendant for permission to dig earth and cover

the kiln; the Defendant refuses, and he not being bound to grant the permission, it is admitted that this refusal does not amount to a conversion. The Plaintiff then formally asks a permission which the law had already afforded to him, and which Defendant could not abridge or withhold. The Defendant refuses and threatens the Plaintiff with a suit, in case he should enter upon his premises and take away the lightwood; and the parties, no doubt, believed that it was in law necessary to obtain such permission, to prevent the plaintiff from becoming a trespasser. This menace, it is said, amounts to a conversion, and it is the policy of the law to do away with the necessity that the Plaintiff was reduced to, of taking his property at the risque of a suit though without foundation. However stupid the conduct of the Defendant hath been, yet when we recollect, that in legal understanding, conversion is *an act*, and that in all instances where the words of a party are given in evidence, it is with a view of inferring such act, it would seem irresistibly to follow that where there is clear evidence that no act has been done, it is equally as clear that there has been no conversion. What has the Plaintiff to complain of? Has the Defendant injured his property? Has he used it in any way, or exercised any act of ownership inconsistent with the Plaintiff's right? He has not. He has merely threatened to sue the Plaintiff if he took the lightwood away, or entered upon his premises for that purpose, and it is admitted that no such action would lie."

In a separate dissenting opinion Judge Hall said, page 305:

"The lightwood which is the subject matter of this action, was legally levied upon and sold to the Plaintiff. That sale gave the Plaintiff a title to it. The kiln of lightwood could not be delivered and carried away like most other kinds of personal property; it was cumbrous and could only be removed in the manner proposed by the Plaintiff. If so, he had a right to remove it in that manner, and the Defendant had no right to forbid him. Of course, the Plaintiff's right was not impaired by the Defendant's threat to sue him if he entered upon

his land and removed the lightwood; his physical power to do himself justice still remained. Had that been opposed, then there would have been a conversion. Had the Defendant sued the Plaintiff for carrying away the lightwood, he could not have recovered, because the Plaintiff only did that, which the law gave him a right to do, that was, to enter on the Defendant's land and carry away property to which he had acquired a title by a purchase under an execution, property which could be removed in no other way. The threats which Defendant made was (were) of no legal significance, and ought to have been disregarded by the Plaintiff."

In the majority opinion the court proceeded with reasoning which is in accord with the reasoning of said two dissenting opinions, and then said, p. 307: "We therefore think that the refusal of the defendant, as stated in this case, was such evidence of a conversion as was proper to be left to a Jury," and affirmed the judgment. The Supreme Court of North Carolina did not determine whether the defendant's refusal, as shown by the evidence, did or did not constitute conversion, but held, in said majority opinion, that was a question which was proper to be left to a jury. We think that was a question of law, and in Indiana such questions must be determined by the court and not by the jury. The result reached by that court was not a logical result of the reasoning employed in either of said opinions.

The general statements on the law of conversion contained in said dissenting opinions are correct. The reasoning of said dissenting opinions is so peculiarly applicable to the instant case, and so convincing that we think we can best express our views on the question involved in the instant case by applying said reasoning to the facts in this case, and we do so apply it.

We note the distinction that in said case the plaintiff had bought the lightwood at a sheriff's sale, that it

might be contended that such sale carried with it an implied right to seize the lightwood, wherever it might be found, while in the instant case there would be no basis for such implied right of seizure; but if the Supreme Court of North Carolina had followed the reasoning which it employed, to a logical result, as did the two dissenting judges, that would have been a stronger case against the alleged convertor, than the instant case, but still a decision that the facts in said stronger case did not constitute conversion.

As Judge Seawall did in his said opinion, we might well ask, with reference to the instant case, What has the appellant to complain of? Has the appellee injured his property? Has he used it in any way, or exercised any act of ownership inconsistent with appellant's right? We might well add these questions. Are we forced to say that appellee has done anything which, in legal effect, amounts to more than an exercise of his right to keep appellant off his premises? Is the mere exercise of such right a wrongful invasion of appellant's rights? The answers to all these questions lead to the conclusion that appellee has done nothing which was wrongful.

The evidence in the instant case does not conclusively show that there was a "wrongful invasion of appellant's right to, and dominion over" the coal. (*First Nat'l. Bank* v. *Ransford, supra.*) Therefore the verdict of the jury should not be interefered with, and the judgment should be affirmed.

Judgment affirmed.

Bridwell, P. J., concurs in result reached.