YEAGER & SULLIVAN, INC. *v.* THE FARMERS BANK.

[No. 2-373A56. Filed October 23, 1974.]

*James T. Robison,* of Frankfort, *Arthur D. Bishop,* of Flora, for appellant.

*Ryan, Hartzell, Ryan & Bock,* of Frankfort, for appellee.

WHITE, J.—The plaintiff-appellant, Yeager & Sullivan, Inc., commenced this action to recover the proceeds of five checks allegedly converted by the defendants Robert M. McCarty, William H. McCarty, individually and d/b/a Robert McCarty & Son (hereinafter collectively referred to as the McCartys)

and the Farmers Bank (Bank). During the trial, the Bank filed a second paragraph of defense alleging that the plaintiff had received the benefit of the checks, in that they were deposited in an account from which the McCartys paid the expenses of a joint venture in which plaintiff and the McCartys had been engaged. That defense was partially successful. The court found for the plaintiff on two checks and for the defendant-Bank on three checks. (The McCarty's motion for judgment on the evidence [TR. 41(B)] was sustained because a prior judgment barred this action. They are not parties to this appeal.)

Plaintiff contends the finding for the Bank is not sustained by sufficient evidence and is contrary to law.

## I.

An understanding of the positions taken by the parties to this appeal necessitates a rather full recital of the evidence adduced at trial.

## A.

It is conceded by the Bank that the plaintiff, by its proof at trial, established a *prima facie* case of liability against both the defendant Bank and the defendants McCartys. The plaintiff proved that the five checks in suit were made payable either to the order of "Bob McCarty & Son Yeager & Sullivan, Inc.", or "Robert McCarty & Son Yeager & Sullivan", or "Robert McCarty & Son and Yeager & Sullivan"; that the McCartys negotiated the five checks either without plaintiff's endorsement or bearing the forged endorsement of Yeager & Sullivan, Inc.; and that the McCartys did not have authority either to endorse the plaintiff's name or otherwise to negotiate the checks without its endorsement.[1]

---

1. IC 1971, 26-1-3-116, Ind. Ann. Stat. § 19-3-116 (Burns 1964 Repl.), states, in pertinent part:

"Instruments payable to two or more persons.—an instrument payable to the order of two [2] or more persons

\* \* \*

"(b) if not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them." Footnote Cont'd.

With regard to the defendant-appellee Bank, a depositary-collecting bank in this situation,[2] the plaintiff further established that the McCartys, customers of the Bank,[3] had negotiated all five of the checks at the Bank and, that the Bank did not deal with the instruments ". . . in accordance with the reasonable commercial standards applicable to the business. . . ."[4]

## B.

The evidence relied on by the plaintiff-appellant to sustain its claim for damages revolves around the business dealings between it and the McCartys. The plaintiff argues that its evidence shows that the proceeds of the checks were to be applied consistent with the terms of a business agreement between it and the McCartys; that the proceeds were not so applied; and that the plaintiff suffered a loss in an amount

---

The three checks involved in this appeal contain neither the word "and" nor the word "or" between the named copayees. The parties to this appeal do not dispute that the endorsement of *both* payees was required for proper negotiation. See: *Feldman Construction Co.* v. *Union Bank* (1972), 104 Cal. Rptr. 912, 28 Cal. App. 3rd 731, 11 U.C.C. Rep. 828; *Hinojosa* v. *Love* (1973), Tex. Civ. App., 496 S.W.2d 224, 12 U.C.C. Rep. 706.

2.  IC 1971, 26-1-4-105, Ind. Ann. Stat. § 19-4-105 (Burns 1964 Repl.) states, in pertinent part:
"* * *
"(a) 'Depository bank' means the first bank to which an item is transferred for collection even though it is also the payor bank;
"* * *
"(d) 'Collecting bank' means any bank handling the item for collection except the payor bank;
"* * *"

3.  The plaintiff-appellant, Yeager & Sullivan, Inc., was not a customer of the defendant Bank.

4.  IC 1971, 26-1-3-419(3), Ind. Ann. Stat. § 19-3-419(3) (Burns 1964 Repl.) states:
"(3) Subject to the provisions of this Act [Chapters 1 to 9 of this title] concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one [1] who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands."

The plaintiff's claims against the Bank were based on IC 1971, 26-1-3-419.

equal to the sum of the face value of the five checks. That evidence is as follows:

The plaintiff-appellant, Yeager & Sullivan, Inc., is a corporation in the "feeder pig business". Its president, Charles Yeager, who is also an officer of "Triangle Feeds, Inc.", a corporation in the "milling business", testified that it, along with Triangle Feeds, had entered into a written "AGREEMENT" with Robert and William McCarty on July 8, 1965. By the terms of this "AGREEMENT" the two corporations agreed to sell feeder pigs and feed to the McCartys, and the McCartys agreed to buy the feeder pigs and feed. The pigs were sold in loads "known as projects" with the plaintiff retaining a security interest in each project and the McCartys giving "certain promissory note or notes" for the purchase price of a particular project. The McCartys would also give additional notes for any feed bought and used during the feeding out process of a project.

In practice, all of the notes given by the McCartys were attached to a security agreement covering the specific project against which the indebtedness was incurred. By the terms of the "AGREEMENT", the total indebtedness on a given project was to be paid by the McCartys from the proceeds of the sale at market of the particular project.

On September 14, 1967, the plaintiff, having discovered that the McCartys had not been applying the proceeds of the sale of the "project pigs" to the indebtedness, sent a letter to five markets informing them that "all hogs sold by" the McCartys were covered by security agreements and financing statements, and instructing the markets to make all future checks payable to it and the McCartys, have the McCartys endorse the check and then mail the check to Yeager & Sullivan, Inc., immediately.

Sometime in late January, or February, of 1968, plaintiff discovered that although the McCartys had sold all of the hogs, not all of the notes had been paid. At this time the plaintiff discovered that the McCartys had, from December

19, 1967, to January 16, 1968, wrongfully negotiated the five checks.

## C.

By not arguing to the contrary, the plaintiff tacitly concedes that the evidence most favorable to the Bank is sufficient to support the conclusion that the plaintiff and the McCartys were engaged in a joint venture.

The question, then, is not whether the Bank proved a joint venture, but the effect thereof. The Bank contends that by proving the joint venture, it established that the McCartys used the proceeds of three checks to pay debts of the venture. The Bank's evidence on this point is as follows:

During the period of dealings between the plaintiff and the McCartys, there existed a corporation, "Feed-R-Pig, Inc.", formed by the McCartys for the "purpose of feeding hogs." Although "Feed-R-Pig, Inc.", was not a party to the "AGREE-MENT" between plaintiff, Triangle Feeds and the McCartys, the McCartys sold the "project pigs" and discharged debts of the operation in the corporate name.

Among the debts paid by the McCartys, through the "Feed-R-Pig, Inc." checking account, were those owing to subcontract feeders on whose farms particular "projects" were delivered and the feeding out process carried to completion. Though the plaintiff was unaware of what specific arrangements were made between the McCartys and the subcontract feeders, the plaintiff knew of the arrangements and delivered "projects" directly to these sub-feeders.

At trial, the Bank introduced into evidence the ledger sheets of the Feed-R-Pig account covering the period from December 1, 1967, through January 31, 1968, and the checks drawn thereon. Of the five checks sued on, the three involved in this appeal appear as deposits on those ledger sheets. Of the numerous checks drawn on the account during this period, the Bank asserts that "most, if not all, the checks . . . were used for the benefit of the venture, and thus for the benefit

of" plaintiff. Specifically, the Bank points to three checks payable to the order of either sub-contract feeders or truckers of pigs, all of whom the McCartys had to pay in order to get possession of the pigs to sell at market. Furthermore, the Bank established that all moneys flowing through the Feed-R-Pig account were derived from the feeding venture, since the McCartys did not have any other source of income from 1965 through early 1968.

## II.

Based upon the evidence as outlined, the specific arguments of the parties are as follows:

The plaintiff-appellant takes the position that its *prima facie* case remains unrebutted, thus "the Uniform Commercial Code and the case law would provide for strict liability" and therefore recovery of damages in an amount equal to the sum of the face value of the five checks. It contends that inasmuch as this case is governed by the law of negotiable instruments the only defense available to the Bank is to show "some form of payment" in accordance with IC 1971, 26-1-3-603, Ind. Ann. Stat. § 19-3-603 (Burns 1964 Repl.).[5] Alternatively, it

5. IC 1971, 26-1-3-603, Ind. Ann. Stat. § 19-3-603 (Burns 1964 Repl.) states:

"Payment or satisfaction.— (1) The liability of any party is discharged to the extent of his payment or satisfaction to the holder even though it is made with knowledge of a claim of another person to the instrument unless prior to such payment or satisfaction the person making the claim either supplies indemnity deemed adequate by the party seeking the discharge or enjoins payment or satisfaction by order of a court of competent jurisdiction in an action in which the adverse claimant and the holder are parties. This subsection does not, however, result in the discharge of the liability

(a) of a party who in bad faith pays or satisfies a holder who acquired the instrument by theft or who (unless having the rights of a holder in due course) holds through one who so acquired it, or

(b) of a party (other than an intermediary bank or payor bank which is not a depositary bank) who pays or satisfies the holder of an instrument which has been restrictively indorsed in a manner not consistent with the terms of such restrictive indorsement.

(2) Payment or satisfaction may be made with the consent of the holder by any person including a stranger to the instrument. Surrender of the instrument to such a person gives him the rights of a transferee (section [19-]3-201)."

contends that if the premise of the Bank's defense is valid, the Bank failed to carry its burden of proof because there is "no evidence to show *to what extent* Appellant was benefited, if any, by [the three] *particular* checks." (Appellant's emphasis.)

The position of the defendant-appellee Bank is, simply stated, that by proving a joint venture it established that the McCartys used the proceeds of the three checks to discharge debts of the venture. Consequently, the plaintiff suffered no loss or damages regarding the three checks.

## III.

### A.

The plaintiff's first contention, that the only defense to its conversion claims recognized by the Uniform Commercial Code requires the Bank to prove "payment . . . to the holder" pursuant to IC 1971, 26-1-3-603 (quoted *ante*, n. 5, p. 21), misconstrues the nature of the conversion statute, IC 1971, 26-1-3-419. The conversion statute simply lists ways in which a negotiable instrument may be converted; it does not set forth the elements which constitute the tort of conversion. See Indiana Comment, IC 1971, 26-1-3-419; Official Comment, Uniform Commercial Code § 3-419; *Accord,* A.L.I. Restatement (Second) of Torts §§ 241A, 223, 222A. Thus the nature of plaintiff's claim is conversion, a descendant of common law trover, recognized by the conversion statute, but the elements of which are founded in those "principles of law and equity . . . [which] supplement" the code through its supplementary provision, IC 1971, 26-1-1-103, Ind. Ann. Stat. § 19-1-103. And in an action for conversion, it is as necessary for the plaintiff to establish its amount of loss as it is permissible for a defendant to put forth a defense in mitigation of damages. *Miller, et al.* v. *Long* (1956), 126 Ind. App. 482, 501, 131 N.E.2d 348; *cf. First Nat. Bank* v. *Ransford* (1914), 55 Ind. App. 663, 104 N.E. 604. Con-

sequently, though a defense based on "payment" is permissible, such a defense is not exclusive, (*cf.* IC 1971, 26-1-1-103, *supra,*) and a general defense in mitigation of damages is proper.

We therefore find no merit in the appellant's assertion that it is automatically entitled to damages equal to the sum of the face value of the five checks. Likewise, there is no merit to the contention that payment is the sole defense to a conversion claim.

## B.

The appellant's second contention, that the evidence fails to show the amount of benefit received by it from the three particular checks, is based upon its implicit assertion that the sole debt of the hog operation is represented by the various notes executed by the McCartys and subsequently discounted by the plaintiff to another bank. It suggests that the only benefit which could be shown is an application of the proceeds to the above described debt and that there is no evidence which shows such an application.

The Bank's reply is that its evidence is sufficient to show first, a joint venture; second, that the McCartys used the "Feed-R-Pig" account to pay debts of the joint-venture-hog operation; third, that all moneys flowing through the account were proceeds of "project" sales; and, finally, reliance on the three checks to the two sub-feeders and the trucker of pigs as establishing, in a rather circuitous manner, that the plaintiff received the benefits of the proceeds of the three checks deposited in the account.

Were we concerned solely with whether the evidence is sufficient to sustain the Bank's theory, this opinion could end here. The finding of a joint venture has the effect of rendering the parties to the venture liable as partners for the legal obligations of the venture.[6] Consequently the evidence, show-

---

6. *Diddel* v. *American Security Co.* (1928), 94 Ind. App. 639, 647, 161 N.E. 689; *Brown* v. *Budd* (1850), 2 Ind. 442.

ing the purpose of the account was to pay debts of the hog operation and that all moneys in the account were proceeds of "project" sales, is sufficient to support the conclusion that the plaintiff, as a party to the venture, received benefits from the payment of venture debts. However, inasmuch as the evidence is sufficient to sustain the theory, the Bank has failed to cite us to a single authority which would support its theory as a matter of law. As a consequence, our research has led us to consider the question of whether a defendant can claim

> "a mitigation of damages by showing that he has, by his own act without the aid of a valid legal process or the consent of plaintiff, applied the property or its proceeds on a debt owed by plaintiff to . . . a third person; . . . ."

89 C.J.S., Trover and Conversion § 188, p. 654. The cited work notes a split of authority on the question and we have found only one Indiana case which sheds light on the question,[7] that being *Sharpe* v. *Graydon* (1884), 99 Ind. 232.

In *Sharpe* the Supreme Court held, *inter alia*, that a verdict and judgment for plaintiff for $1,540.00 was excessive. The plaintiff, Mrs. Graydon, had alleged that the defendant Sharpe had converted $1,000.00 of a $3,000.00 loan by failing to apply it to a note held by one Browning. The remaining $2,000.00 was to be paid to the plaintiff's husband. At trial, the defendant established that the husband had applied $300.00 of the $3,000.00 to the Browning note. In view of this fact, the Court concluded that, notwithstanding the defendant's conversion, the maximum amount plaintiff could recover was not $1,000.00 plus interest but $700.00 plus interest, there being no loss as to the $300.00 shown to have been paid on the note by the husband.

To the extent *Sharpe* can be read as recognizing the right of a defendant-converter to mitigate damages by establishing

---

7. *First Nat. Bank* v. *Ransford* (1914), 55 Ind. App. 663, 104 N.E. 604, was concerned with the fact question of whether the plaintiff had given the Bank authority to apply proceeds to her debt or her husband's debt.

a payment, partial or full, of a debt, which benefits the plaintiff, through the act of a third party, it parallels the case at bar and aids the Bank. But a more accurate reading requires us to say that the benefit must be an application of the converted proceeds to the specific debt which the proceeds were intended to apply, i.e., the application of $300.00 to the note the $1,000.00 was to pay. In terms of the situation at bar, this means that the Bank could only mitigate the plaintiff's damages by showing an application of the converted proceeds to the debt for which the proceeds were intended, that being, as plaintiff contends, consistent with the terms of the "AGREEMENT". Though such a reading of *Sharpe, supra* (99 Ind. 232) may be criticized as being too strict, such a reading finds support in recent decisions of other jurisdictions. In *Conwed Corp.* v. *First-Citizens Bank & Trust Co.* (1974), 262 S.C. 48, 202 S.E.2d 22, U.C.C. Rep. 140, the plaintiff-appellant brought suit against a payor bank and a depositary bank for the conversion of a check payable to the order of plaintiff and a subcontractor to whom plaintiff supplied material. A motion for summary judgment was granted in favor of the depositary bank ". . . based on the admitted fact that plaintiff received from [the subcontractor] . . . the proceeds of the check upon which plaintiff's endorsement had been forged." (Id., 202 S.E.2d at 23.) On appeal, the plaintiff argued that although it had received the proceeds, it had been instructed to apply the proceeds to the wrong accounts. In reversing the trial court the following reasoning was utilized:

"It is, of course, true that where a payee whose endorsement has been forged receives and retains the proceeds of a check, with knowledge of the forgery of his endorsement, and with the proceeds being applied to the obligation which the check was issued to pay, the payee has suffered no damage, and, accordingly, cannot recover against a bank for paying such check on the forged endorsement. A different rule applies, however, where the proceeds, even though received by the payee, were not applied by the forger to the obligation which the check was issued to dis-

charge. Life Ins. Co. of Va. v. Edisto Natn'l Bank, 166 S.C. 505, 165 S.E. 178; Carolina Life Ins. Co. v. Bank of Greenwood, 217 S.C. 277, 60 S.E.2d 599. Our decisions appear to be in accord with the weight of all reasoned authority from other jurisdictions. See particularly the case of Hillsley v. State Bank of Albany, 24 A.D.2d 28, 263 N.Y.S.2d 578, aff., 18 N.Y.2d 952, 277 N.Y.S.2d 148, 223 N.E.2d 571." (Id. at 24.) See also *Hillsley* v. *State Bank of Albany, supra,* (24 A.D.2d 28, 263 N.Y.S.2d 578); *Nelson Anderson, Inc.* v. *McManus* (1956), 334 Mass. 394, 135 N.E.2d 302; and *compare* RESTATEMENT OF TORTS § 923 (1939), *with* RESTATEMENT OF RESTITUTION § 2 (1937).

As recognized by our Supreme Court in *Seip* v. *Gray* (1949), 227 Ind. 52, 56, 83 N.E.2d 790:

" 'The essence of every conversion is the wrongful invasion of the right to, and absolute dominion over, property owned, or controlled, by the person deprived thereof, or of its use and benefit.' *First National Bank* v. *Ransford* (1913), 55 Ind. App. 663, 666, 104 N.E. 604; *Kidder* v. *Biddle* (1895), 13 Ind. App. 653, 659, 42 N.E. 293; *Vandalia R. Co.* v. *Upson Nut Co.* (1913), 55 Ind. App. 252, 254, 101 N.E. 114, 101 N.E. 388; *Chicago I. & L. R. R. Co.* v. *Pope* (1934), 99 Ind. App. 280, 282, 188 N.E. 594."

It would seem, therefore, that to allow a tortfeasor-converter to mitigate damages by showing an application of the converted property to the benefit of the injured party would have, unless the application was to the specific use the converted property was to be put, the effect of allowing the tortfeasor to dictate to the true owner how his property is to be used. Such an effect would undermine the "essence" of conversion.

Recognizing, as did the court in *Harry H. White Lumber Co.* v. *Crocker-Citizens Nat. Bank* (1967), 253 Cal. App. 2d 368, 374, 61 Cal. Rptr. 381, 385, that "[t]he cardinal purpose for . . . [a joint payee check] is to prevent either payee from transferring the instrument or receiving money on it without the concurrence of the other", it is the depositary bank that is in the best position to protect the interests of all parties to

the instrument. See generally, J. White and R. Summers, HANDBOOK of the Law under the UNIFORM COMMERCIAL CODE § 15-4 pp. 499-509 (1972).

We therefore recognize the validity of requiring a defendant, who seeks to mitigate damages in a conversion action, to establish that the converted proceeds were applied to the specific debt the proceeds were intended to discharge. *Sharpe* v. *Graydon, supra; Conwed Corp.* v. *First-Citizens Bank & Trust Co., supra; Hillsley* v. *State Bank of Albany, supra.*

Turning to the evidence, it is important to note that the Bank contends the debts paid were debts of a joint venture, the parties to which were the plaintiff, Robert McCarty and William McCarty, both individually and d/b/a Robert McCarty & Son. There is no evidence which will support a finding that the corporation, Feed-R-Pig, Inc., is a member of the venture; furthermore, it was not a party to this suit.

Implicitly, the Bank suggests that the joint venture debts are the specific debts the proceeds were to be applied to. Though we have found no authority which would sustain the proposition that proof of a joint venture by a third person who is not a party to the venture would have such an effect, the nature of two of the debts discharged is such that the equitable nature of mitigation should not allow full damages to the plaintiff-appellant.

The Bank has established that the joint venture, through the acts of all parties to the venture, had placed hogs on the farms of sub-feeders. It has also established that during the period of the conversions two checks were made payable to the order of these sub-feeders. Neither party to this suit has apparently realized that the payment to these sub-feeders is, in the eyes of the law, a payment of a statutory lien. See IC 1971, 32-8-29-1 and IC 1971, 32-8-30-1—32-8-30-8 (Burns Code Ed.). These liens were superior to the liens held by the plaintiff under the security agreements. See IC 1971, 26-1-

9-310, Ind. Ann. Stat. § 19-9-310 (Burns 1964 Repl.). As a consequence, in order for the venture to attain possession of the hogs on these farms it was necessary to pay these liens. The payment was to come from the proceeds of sale of "projects". Thus a specific debt to which the proceeds of sale were to apply were the liens of the sub-feeders, and we find the evidence to be sufficient, and the law to be in accordance, with allowing mitigation to this extent. We also note that mitigation may be shown by a discharge of a lien the converted property was subject to. Cf. Restatement of Torts § 923. *Farmers & Merchants Nat. Bank of Ivanhoe* v. *Przymus* (1924), 161 Minn. 85, 200 N.W. 931; *Rose* v. *Galbraith Motor Company* (1957), 51 Wash. 2d 31, 314 P.2d 924.

The three checks involved in this appeal have a total face value of $5,409.20.[8] The two checks shown to have been written on the Feed-R-Pig, Inc., account to pay sub-feeders total $1,900.00, which represents the total amount for which the Bank is entitled to credit in mitigation. We therefore conclude that the judgment in favor of appellant against appellee in the sum of $1,119.53 and costs should be increased to the sum of $4,628.73 and costs. This cause is therefore remanded to the trial court with directions to modify the judgment accordingly.

Remanded with directions.

Sullivan, P.J., and Buchanan, J., concur.

NOTE.—Reported at 317 N.E.2d 792.

---

8. In the judgment, the check dated December 19, 1967, is stated to be in an amount of $739.11. Our examination of the evidence and exhibits reveals the amount to be $729.11.