JOHN A. JOHNSON *v.* STATE OF INDIANA.

[No. 2-1272A136. Filed November 29, 1973.]

*Frank E. Spencer,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert E. Dwyer,* Deputy Attorney General, for appellee.

SULLIVAN, J.—Defendant-appellant John A. Johnson (Johnson) was convicted of theft following trial by the court without a jury.

The indictment brought against Johnson charged that:

". . . John A. Johnson on or about the 28th day of May, A.D. 1971, at and in the County of Marion and in the State of Indiana, committed the crime of theft in that he knowingly, unlawfully and feloniously obtained property, to-wit: Money of the value of Two Thousand Two Hundred and 00/100 Dollars ($2,200.00), upon agreement and subject to a known legal obligation to use said money to purchase a 1970 Chevrolet automobile and establish a first lien on the certificate of title to said automobile in favor of S-W Employees Federal Credit Union, a corporation, and said John A. Johnson failed to make the required disposition of the said money by failing to establish a first lien of [sic] a certificate of title to said 1970 Chevrolet automobile in favor of S-W Employees Federal Credit Union, a corporation, . . ."

Johnson contends, and the State has conceded in its brief and in oral argument that the purported offense charged in the indictment must be viewed exclusively in light of IC 35-17-5-4, Ind. Ann. Stat. § 10-3031 (Burns 1973 Supp.) (hereinafter cited as § 3031) which reads:

"(1) Scope. A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payment or other disposition, whether from such property or its proceeds commits theft if he deals with the property obtained as his own, and either fails to make the required payment or disposition or, if he is a private fiduciary, fails to make the required payment or disposition after demand has been made by the person legally authorized to do so or by the surety on his bond, except where the actor's obligation in the transaction was limited to a promise or other duty to be performed in the future without any

present duty to reserve property for such performance. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the actor's failure to make the required payment or disposition.

(2) Inferences. A person within the categories listed below shall be inferred to have knowledge of any legal obligation relevant under subsection (1), and shall in addition be inferred to have dealt with the property as his own if he fails to make a required payment or disposition, or if he falsifies a relevant account, or if he has a shortage in a relevant account, or if he, being an officer or employee of the government, fails to pay over to his successor any property remaining in his hands, or deposits government property contrary to law, or exchanges it for other property except as allowed by law:

(a) an officer or employee of the government or of a credit institution; or

(b) a fiduciary; or

(c) a person engaged in a business subject to a statutory obligation to reserve property received or equivalent amounts of his own property for specified purposes."

The evidence reveals that Johnson, an employee of Stark-Wetzel & Co., Inc., contacted the Stark-Wetzel Credit Union on May 28, 1971 to borrow $2200.00 to buy an automobile. He informed Mary Forey, the manager of the Credit Union, that he wished to purchase a 1970 Chevrolet Monte Carlo from a John Moore. Forey made out a security agreement which included the make, model and year of the vehicle and the amount of money borrowed. Johnson and his wife signed the security agreement and Johnson thereafter telephoned Forey and gave her a motor vehicle serial number which was placed on the security agreement as the serial number of the 1970 Chevrolet Monte Carlo. On the date Johnson made out the security agreement, he signed a truth in lending form, a wage assignment, a promissory note and a loan application. A check payable jointly to Johnson and Moore was approved by the credit union on May 29, 1971.

Because Johnson had obtained several automobile loans

from the credit union on prior occasions, the credit union issued its check for $2200.00 and requested that Johnson purchase the vehicle and have the certificate of title sent to the credit union. The credit union never received the certificate of title.

After obtaining the check, Johnson contacted Moore, a neighborhood friend, and offered him $25.00 to endorse the check. Moore consented, endorsed the check, and he and Johnson cashed the check. Johnson received the proceeds and gave Moore the agreed $25.00. Johnson made a "couple" of payments on the loan, then left his job at Stark-Wetzel.

Johnson presents the following contentions:

1. Johnson is not a person presumed to have knowledge of a legal obligation pursuant to § 3031.
2. Johnson had no present duty to reserve property for the performance of the promise pursuant to § 3031.
3. Johnson's obligation was limited to a promise to be performed in the future and thus comes within the exception of § 3031.

Stated more succinctly, the determinative question before us is whether the acts alleged and proved to have been committed by Johnson constitute an offense as defined by § 3031.

## § 3031 IS NOT APPLICABLE TO ACTS COMMITTED BY A DEBTOR IN AN AUTOMOBILE FINANCING CONSUMER-DEBTOR/CREDITOR RELATIONSHIP

The essential elements of the offense defined in § 3031 are:

(1) A person who obtains property (2) upon agreement *or* subject to a known legal obligation (3) to make specified payments *or* other disposition (whether from the property or its proceeds).

If the above three conditions are met, then a person commits theft if he: (4) deals with the property obtained as his own *and* (5) fails to make the required payment or disposition.

An express exception is contained within § 3031. The of-

fense is not committed when the actor's obligation in the transaction is limited to a promise or other duty to be performed in the future without any present duty to reserve the property for such performance.

At first blush, it appears that § 3031 might be construed to apply to certain debtor-creditor relationships such as in the instant case. But in construing or interpreting[1] statutes a cardinal rule is that effect be given to the legislative intent of the act. *Marhoefer Packing Co., Inc.* v. *Indiana Dept. of State Revenue* (1973), 157 Ind. App. 505, 301 N.E.2d 209. Thus to properly construe § 3031, we must look to the legislative intent.[2]

The Indiana Legislative Advisory Committee Report of the Criminal Code Study Commission, Appendix I, at 281 (1962) states that § 3031 was added to the Offenses Against Property Act "to take care of the *rare* case where a prosecutor doubts that an offense has been committed under § 10-3030[3] because

1. "There are numerous judicial and juridical expressions which distinguish between interpretation and construction on the ground that interpretation determines the meaning of words and construction determines the application of words to the facts in litigation. * * * In practice, however, judicial behavior in resolving statutory issues does not appear to differ according to whether it is characterized as construction or interpretation." 2A Sutherland, *Statutory Construction* § 45.04, p. 14.

2. "It is often said that extrinsic aids may be considered only when a statute is ambiguous and not where the language is clear. But ambiguity is not uniformly insisted on as a prerequisite to the use of aids to construction. Thus it has been said that 'Usually a court looks into the legislative history to clear up some statutory ambiguity . . . but such ambiguity is not the sine qua non for a judicial inquiry into legislative history,' and that 'the plain meaning rule . . . is not to be used to thwart or distort the intent of Congress by excluding from consideration enlightening material from the legislative files.'" 2 A Sutherland, *Statutory Construction* § 48.01, p. 182.

3. IC 1971 35-17-5-3, Ind. Ann. Stat. § 10-3030 (Burns 1973 Supp.) provides:

"a person commits theft when he (1) knowingly:
    (a) obtains or exerts unauthorized control over property of the owner; or
    (b) obtains by deception control over property of the owner or a signature to any written instrument; or
    (c) alters, replaces, transfers or substitutes without authorization of the owner any label, price tag or price marking upon any property

the funds in question have never been in the possession of the victim." Such statement would indicate the lack of an intent to incorporate into § 3031, acts committed by persons involved in a normal "consumer goods" financing arrangement whereby a debtor-creditor relationship is established. Such arrangements are the rule rather than the exception in modern commerce. They are certainly far from rare. Additionally, we cannot conceive that the credit union could be considered a "victim" which did not have possession of the "funds" (draft or money) at some point in time.

An example of the *rare* case intended to be proscribed was stated by the Study Commission as follows:

"E.g., an employer withholds part of an employee's salary for a specified purpose and fails to use it for that purpose. It also allows the Act to make special provision, by way of

---

or merchandise displayed or offered for sale by any mercantile establishment, as defined by IC 1971, 35-3-2-4(c) [subsection (c) of § 10-3045]; or

(d) transfers without authorization of the owner any property or merchandise displayed or offered for sale by any mercantile establishment, as defined by IC 1971, 35-3-2-4(c) [subsection (c) of § 10-3045] from the package, bag or container in or on which such product or merchandise is displayed, to any other package, bag, or container; or

(e) obtains by threat control over property of the owner or a signature to any written instrument; or

(f) obtains control over stolen property knowing the property to have been stolen by another, which knowledge may be inferred from the possession of such stolen property, wherever the theft may have occurred; or

(g) brings into this state property over which he has obtained control by theft, wherever the theft may have occurred; and

(2) either:

(a) intends to deprive the owner of the use or benefit of the property; or

(b) intends to deprive the owner of some part or all of the value, which value and ownership shall be inferred from the price tag or price marking on such merchandise or property, of any property or merchandise displayed or offered for sale by any mercantile establishment as defined by IC 1971, 35-3-2-4 (c) [subsection (c) of § 10-3045]; or

(c) uses, conceals or abandons the property in such manner as knowingly to deprive the owner of such use or benefit; or

(d) uses, conceals or abandons the property knowing such use, concealment or abandonment probably will deprive the owner of such use or benefit."

the presumptions in § 4(2) [3031(2)] for those whom, because of a special relationship to the owner, the law holds to a higher than ordinary standard of care in dealing with the owner's property."

The "rare case" involving property which has never been in the possession of the victim represents the only apparent *new* crime sought to be embraced within § 3031. This is not to say, however, that § 3031 does not embrace crimes theretofore existent as defined by prior statutory enactments. We view § 3031 as primarily a replacement for various forms of embezzlement[4] but containing as well a provision for punishment of "rare cases" such as delineated by the Study Commission example.

Although not necessarily indicative of the precise legislative intent of the Indiana Statute (§ 3031) but helpful as a comparison, the Model Penal Code § 206.4 (Tent. Draft No. 2 1954) contains an almost identical section which states:

"(1) A person does not commit a crime under this act [§§ 10-3028—10-3041] when he acts under an honest claim of right in that:
\* \* \*
(b) he believes that he is entitled to the property or that he is authorized to dispose of it as he does."
"(2) Owner of encumbered property. An owner in possession of encumbered property does not commit theft as against a person having only a security interest therein by removing or otherwise dealing with the property contrary to the terms of the security agreement, even if title is in the creditor pursuant to mortgage, conditional sales contract or bailment lease."

We thus find an intent *not* to include credit transactions as here considered, in both the Indiana Law and the Model Penal Code.

---

4. A complete summary of the statutes repealed by the Offenses Against Property Act [Acts 1963 (Spec. Sess.), ch. 10] can be found in 4 Part 2 Ind. Ann. Stat. p. 89-90 (Burns 1972 Supp.). *See* Note, *Legislative Revision of Property Crimes in Indiana*, 39 Ind. L.J. 827 f.n. 70 at 842 (1964).

Debtor-creditor relationships of the nature here considered fall without the ambit of § 3031 not only as indicated by the legislative intent alluded to, but by reason of a consideration of the requisite elements of a § 3031 offense in the light of the nature of, and the relationships and obligations created by, loan-security agreement transactions as here involved.

In our consideration of the elements of a § 3031 offense, the word "property" as used in the 1st and 4th elements hereinbefore recited, is pivotal. The first element requires that the alleged violator obtain the property and the fourth requires that he deal with such property as his own. The criminal connotation of the fourth element necessarily presupposes that "the property" obtained by the accused is not his own. This presupposition is consistent with the underlying purpose of § 3031—to make cognizable as "theft" those unauthorized acts of dominion over property in which the victim has a property interest.

In the instant case, the victim (Credit Union) had no property interest in the check after its delivery to Johnson. The sole property interest created for the benefit of the lender in circumstances as here considered is in the collateral designated in the security agreement to secure the borrower's contractual obligation to repay the loan.

Johnson's obligation to repay according to the loan agreement can only have meaning if the Credit Union gives consideration for Johnson's promise to repay. The "giving" of consideration, i.e., the loan of $2200.00, contemplates divestment of the Credit Union's property rights in the check which represents that loan.

Our view in this regard is given substance by reference to the basic law in Indiana concerning negotiable instruments. Transfer of an instrument vests in the transferee such rights as the transferor has therein. IC 26-1-3-201, Ind. Ann. Stat. § 19-3-201(1) (Burns 1964). Thus, the payee of a check succeeds to all the rights of the

drawer when such check is transferred and delivered to the payee.

The negotiability of a check is not affected by the fact that it is drawn in return for creation of a debt obligation from the payee to the drawer which is secured by collateral. IC 26-1-3-119, Ind. Ann. Stat. § 19-3-119 (Burns 1964). Nor is such negotiability affected by a promise to maintain or protect collateral. IC 26-1-3-112, Ind. Ann. Stat. § 19-3-112 (Burns 1964). Thus a borrower who accepts a check representing the proceeds of his loan may freely negotiate that check as his own property notwithstanding a security agreement which secures his obligation to repay.

The free right of negotiation inures to the benefit of a payee of a check even though he may have obtained the instrument by fraud. IC 26-1-3-207, Ind. Ann. Stat. § 19-3-207 (Burns 1973 Supp.)[5] Appropros of the facts before us, the Official Comments to § 3-207 state:

"It is inherent in the character of negotiable paper that any person in possession of an instrument which by its terms runs to him is a holder, and that anyone may deal with him as a holder. The principle finds its most extreme application in the well settled rule that a holder in due course may take the paper even from a thief and be protected against the claim of the rightful owner. Where there is actual negotiation, even in an entirely void transaction, it is no less effective. The policy of this provision, as well as of the last sentence of the original Section 59, is that any person to whom an instrument is negotiated is a holder until the instrument has been recovered from his possession; *and that any person who negotiates an instrument thereby parts with all his rights in it until such recovery.*" (Emphasis supplied)

The basic loan agreement between Johnson and the Credit Union created an obligation on the part of the Credit Union

---

5. The payee becomes a "holder" pursuant to IC 26-1-1-201(20), Ind. Ann. Stat. § 19-1-201(20) (Burns 1964), and therefore acquires by "negotiation" from the drawer. IC 26-1-3-202, Ind. Ann. Stat. § 19-3-202 (Burns 1964).

to pay to Johnson $2200.00 subject to Johnson's contractual obligation to repay that amount as secured by a property interest in certain collateral described in the security agreement.

IC 26-1-3-802, Ind. Ann. Stat. § 19-3-802 (Burns 1964) provides:

> "Unless otherwise agreed where an instrument is taken for an underlying obligation . . . the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation; discharge of the underlying obligor on the instrument also discharges him on the obligation."

This statutory provision clearly indicates that the Credit Union's underlying contractual obligation to pay Johnson the loan proceeds was suspended by the issuance of the check to Johnson unless and until the check was dishonored. The lender's obligation could not be held to be suspended unless it has relinquished to the borrower all its property rights in the instrument itself. Retention of a property interest in the check by the lender is inconsistent with a suspension of the obligation to lend the money. In the event of dishonor § 3-802 gives the borrower the right to proceed upon the instrument itself—an incongruous remedy if the borrower is not the true owner of the instrument.

Also of note is IC 26-1-3-419, Ind. Ann. Stat. § 19-3-419 (3) (Burns 1964) which concerns liability of a bank to the true owner for conversion of a check when the bank has in good faith dealt with one not the true owner. The landmark case interpreting this uniform code section is *Stone & Webster Eng. Corp.* v. *First National B&T Co.* (1962) 345 Mass. 1, 184 N.E.2d 358 which held that the "true owner" of a check is the payee and is the proper party to bring a conversion action against a collecting bank for forged or unauthorized endorsements.

By reason of the nature of the transaction between Johnson and the Credit Union, a pure debtor-creditor relationship was created. *Borrowed* money is the borrower's own money. No statute can rationally make it a crime *merely* to deal with one's own money (or other property) "as his own". The statute in question, § 10-3031, obviously has reference only to property which is not the custodian's *own* property.

While it may be that Johnson has in fact violated the criminal statutes of Indiana, such violation, if any, is not embraced within § 3031. His conviction under that section cannot therefore stand.

The judgment is reversed and the cause remanded for further proceedings not inconsistent herewith.

White, J., concurs; Buchanan, P.J., concurs with separate opinion.

## CONCURRING OPINION

BUCHANAN, J.—I agree Johnson's conviction should be reversed but would prefer to do so on the ground that Johnson came into possession of the property in question, $2200.00, with the right to deal with it as his own. Even if an agreement to use the loan proceeds for the purchase of a 1970 Chevrolet automobile be implied, as the State contends, the money was loaned to him for *personal use* as opposed to an obligation or requirement to make disposition of the property for the exclusive use or benefit of the lender.

The agreement contemplated by IC 1971, 35-17-5-4, Ind. Ann. Stat. § 10-3031 (Burns 1973 Supp.) (3031) is one for the use or benefit of the person owning the property. In this vital respect this case differs from *Miller* v. *State* in which a Burger Chef night shift manager was convicted under this same statute, 3031, for appropriating the night receipts to finance a frolic of his own unrelated to an implied agreement of his

employment, i.e., to deposit the receipts to the account of his employer.

To constitute the crime of embezzlement there must be a wrongful appropriation of the property in question—an element lacking in this case. 11 I.L.E. *Embezzlement* § 1, P. 516; 39 Ind. L. J. 842 (1964).

Having obtained possession of the property (money) for personal use with the knowledge and consent of the original owner of that property, Johnson has not dealt "with the property obtained as his own" in the sense contemplated by the statute.

Furthermore, Johnson cannot be guilty of theft by failure to make a required disposition if "he believes that he is entitled to the property or that he is authorized to dispose of it as he does", IC 1971, 35-17-5-7, Ind. Ann. Stat. § 10-3034 (Burns 1973 Supp.) By the very nature of the transaction he was authorized to deal with the property "as his own."

This would seem to be so whether the particular personal use originally contemplated is realized or not.

White, J., concurs.

NOTE.—Reported at 304 N.E.2d 555.