George CLARK, Plaintiff-Appellant,

v.

Jesse GRIFFIN and Mutual Trust Bank, Defendants-Appellees.

No. 1–1284A300.

Court of Appeals of Indiana, First District.

Aug. 6, 1985.

Rehearing Denied Sept. 18, 1985.

George R. Carter, Louisville, Ky., Frank A. Nelson, David L. Mirkin, New Albany, for plaintiff-appellant.

John A. Cody, Jr., Cody & Cody, New Albany, for defendants-appellees.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

George Clark appeals the general judgment of the trial judge in favor of Jesse Griffin and Mutual Trust Bank (MTB). We reverse and remand.

## FACTS

Griffin purchased a house on contract from Margie and William Dietrich. The deed remained with the Dietrichs until the full purchase price was paid. In 1981, while Griffin was still making payments, the house was extensively damaged by fire. In an insurance settlement, Indiana Insurance accepted the estimate of Clark, a general contractor, in the amount of $19,180 to repair the house. Indiana Insurance delivered two drafts to Clark; one in the amount of $15,000, which is not in issue, and the other for $4,180. Each check was made payable to Clark, Griffin and the Dietrichs. The proceeds of the $15,000 check were given to Clark so he could buy materials and get started. The $4,180 check was, by agreement of both Clark and Griffin, to be kept by Griffin while construction took place and released to Clark when Griffin was satisfied with the repair work.

From this point on, the testimony of Clark is in direct conflict with that of Griffin. Despite the agreement, Griffin took the $4,180 check and cashed it at his bank, MTB. The cancelled check bears the endorsement of the Dietrichs, Griffin and Clark. Griffin admitted he signed Clark's name on the back of the check but asserts that Clark told him to do so. Clark maintains he never authorized Griffin to endorse the check and continued to believe the check was in Griffin's lock box while he worked on the house. Clark testified he learned the check was cashed after talking with the insurance company.

Clark brought this action against Griffin for conversion for forging his signature. Also named as defendants were MTB, the depositary bank, and American Fletcher National Bank, the drawee bank. The action against American Fletcher was dismissed without prejudice due to improper venue. After a bench trial, the court entered a general judgment in favor of the defendants. Clark brings this appeal.

## ISSUES

Restated the issues presented for review are as follows:

1. Did Griffin forge Clark's name?
2. Is MTB liable for conversion?
3. Is Griffin liable for conversion?

## DISCUSSION AND DECISION

*Issue One*

■ As this is a general judgment we must affirm the trial court if the judgment can be sustained on any legal theory. *General Plating & Engineering, Inc. v. SYN Industries* (1985), Ind.App., 472 N.E.2d 1290; *Penwell v. Western & Southern Life Insurance Co.* (1985), Ind.App., 474 N.E.2d 1042. We must therefore begin by considering whether or not a forgery occurred. Since Griffin admits he signed Clark's name, the precise issue is whether Clark authorized Griffin to endorse the check on Clark's behalf. Indiana Code section 26–1–3–202(2). If not, the signature constituted a forgery. Indiana Code section 26–1–1–201(43). On this particular issue, Griffin is appealing from a negative judgment. In such a case we may neither reweigh evidence nor judge credibility of witnesses. We may reverse only if the uncontradicted evidence supports no reasonable inference in favor of the decision or if our review of the record leaves us with a definite and firm conviction a mistake has been made. *Burnett v. Heckelman* (1983), Ind.App., 456 N.E.2d 1094.

■ Griffin argues we must affirm solely because the evidence concerning authorization was conflicting. He contends, under the circumstances, we must accept the trial judge's implicit decision to believe his testimony. At trial, Griffin stated that he received a phone call from Clark where Clark instructed him to sign Clark's name to the check and cash it. According to Griffin, Clark was concerned that the check would become stale after ninety (90) days and another would have to be obtained from the insurance company. In fact, it was written directly on the check that it would be void after ninety days. Normally, we would be compelled to accept this testimony as conclusive despite Clark's testimony to the contrary. However, our search of the record reveals Griffin's testimony was inherently incredible and we are, therefore, convinced a mistake has been made.

When the uncontradicted evidence is compared to Griffin's testimony it is clear that the check could not have been cashed with Clark's authorization. Griffin testified that he received the check from Clark and carried it in his billfold for "awhile." He then put the check in his lockbox "for a couple of days." Then, after receiving authorization from Clark, he went back to MTB, obtained the check from his lock box and cashed it. However, the uncontradicted evidence shows the check was given to Griffin on Saturday December 5, 1981. The check was cashed with Griffin endorsing his own name and Clark's, on Monday December 7, 1981. Griffin deposited $200 in his checking account and took the remainder in cash. After this transaction, he went directly to his lock box located in the same bank. In light of this evidence we consider Griffin's testimony that he cashed the check *after* receiving authorization incredible. The only possible conclusion from the undisputed evidence is that Griffin cashed the check at his earliest opportunity. It is undisputed that Griffin brought the check to the bank on December 7, 1981. Griffin claims he put the check in his lock box for a couple of days until receiving authorization to cash it. However, it is clear the check was cashed on December 7, 1981, from other undisputed evidence. Therefore, Griffin's testimony that the check remained in the lock box until talking to Clark a couple days later is inherently incredible. The check cannot be both cashed and in the lock box at the same time. Accordingly, Griffin's claim he cashed the check with authorization cannot be believed and the only other evidence is Clark's testimony that he never told Griffin to endorse his name and cash the check. Thus, the check was cashed over a forged endorsement.

*Issues Two and Three*

■ Now that we have established that Clark's endorsement was forged, we consider whether he can recover from either

MTB or Griffin for conversion. Our first inquiry is whether Clark may sue on a theory of conversion. In Indiana it is well settled that the proper party to bring a conversion action on a forged or unauthorized endorsement is the check's payee. *Indiana National Bank v. Holtsclaw* (1884), 98 Ind. 85; *Johnson v. State* (1973), 158 Ind.App. 611, 620, 304 N.E.2d 555, 562. Since Clark was a payee on the check, he has standing to bring this action.

■ We now consider whether MTB is liable for conversion in its capacity as a depositary bank. Clark asserts that Indiana Code section 26–1–3–419(1)(c) specifically authorizes suit against MTB. "(1) An instrument is converted when ... (c) it is paid on a forged indorsement." However, the only suit clearly contemplated by this provision is one against the drawee bank. J. White and R. Summers *Handbook of the Law Under the Uniform Commercial Code* p. 586 (2d Ed.1980). Since MTB was the depositary bank we must look to the qualifying limitation placed on a depositary bank's liability under § 3–419(3).

"(3) Subject to the provisions of this act [26–1–1–101—26–1–10–106] concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands."

In light of this language and the facts of the present case, MTB can be liable only if, by cashing the check, it failed to act in a commercially reasonable manner.

We first note that the burden of proof at trial was on MTB to show it acted in a commercially reasonable manner. *Travelers Insurance Company v. Jefferson National Bank at Kendall* (1981), Fla.App., 404 So.2d 1131. Therefore, we do not review this issue as a negative judgment. Rather, we must determine whether there is sufficient evidence to support a finding that MTB acted pursuant to commercially reasonable standards.

■ A few cases from other jurisdictions have addressed this narrow issue of whether a depositary bank acted reasonably when cashing a check. An examination of these cases reveals certain circumstances which should raise the suspicions of a bank and put it on notice that further inquiries are necessary. For example, when an individual cashes a check made payable to a corporation depositing it in his personal account, normal and reasonable commercial standards require the bank to inquire further to determine whether the individual has the appropriate corporate authority. *American Machine Tool Distributors Ass'n. v. National Permanent Federal Savings & Loan Association* (1983), D.C.App., 464 A.2d 907; *Aetna Casualty & Surety Co. v. Hepler State Bank* (1981), 6 Kan.App.2d 543, 630 P.2d 721; *Belmar Trucking Corporation v. American Trust Co.* (1970), 65 Misc.2d 31, 316 N.Y.S.2d 247. Similarly, where an attorney endorsed and cashed a check made out to an estate and deposited the proceeds into his personal account, the commercially reasonable banking practice required the depositary bank to inquire into the attorney's authority and confirm his agency relationship with the estate. *Salsman v. National Community Bank of Rutherford* (1968), 102 N.J.Super. 482, 246 A.2d 162. In the present case, where Griffin cashed a check made out to multiple payees taking the majority of the proceeds in cash and placing the rest in his personal account, we believe under the prevailing view of commercial reasonableness this put MTB on notice that further inquiry was necessary. Nothing in the record reveals any such inquiry was made. In fact, the testimony of Mr. Heavrin, an employee of MTB, was that he simply took Griffin's word as to his authorization to sign for Clark. In a similar case, where a bank simply relied on the representation of a copayee that another copayee's endorsement was authentic, the court found that the bank failed to comply with reasonable

commercial standards. *Tubin v. Rabin* (N.D.Tex.1974), 389 F.Supp. 787. In the present case, nothing in the record reveals any objective fact or signal that Griffin had authority to endorse for Clark. MTB had no objective indication of any agency, contractual, familial, or employment relationship between Griffin and Clark. Under the circumstances, the commercially reasonable practice required MTB to make a further inquiry to determine whether Griffin had authority to sign for Clark. MTB relied on Griffin's word at its peril. We therefore find the evidence of MTB's actions when cashing the check was insufficient to support a finding that it acted in a commercially reasonable manner.

■ MTB is thus liable to Clark for conversion of the check under § 3–419(3). However, the amount for which it is liable remains at issue. Although two of the four payees do not claim any interest in the proceeds, the interests of Clark and Griffin remain hotly disputed. Clark argues that he is entitled to the face amount of the check pursuant to § 3–419(2) which states the amount of damages is presumed to be the face amount of the draft. However, this subsection explicitly restricts this presumption to suits brought under § 3–419(1) and as we have already determined the present suit can only be maintained pursuant to § 3–419(3). Since nothing in the code governs the measure of damages in the present case we look to the common law regarding the tort of conversion. *Yeager and Sullivan, Inc. v. Farmers Bank* (1974), 162 Ind.App. 15, 22, 317 N.E.2d 792, 797; *see also* Indiana Code section 26–1–1–103. In *Yeager and Sullivan* the court held that where a plaintiff-payee sues a depositary bank in conversion for cashing a check over a copayee's forged endorsement the measure of damages must be mitigated to the extent that the proceeds of the check ultimately were applied to a debt owed by the plaintiff. *Yeager and Sullivan* at 28, 317 N.E.2d at 800. The plaintiff-payee, whose endorsement was forged, cannot recover from the depositary bank if the forger takes the proceeds of the check and applies them to the plaintiff's obligation because under such circumstances, the plaintiff has suffered no injury. *Id.* at 25, 317 N.E.2d at 798. We believe the logical extension of *Yeager and Sullivan* to the present case requires that we hold the bank liable to Clark only to the extent of the loss he has suffered. At this point it becomes necessary to determine the amount due Clark pursuant to the oral agreement with Griffin to repair Griffin's house. This issue was not litigated and we note that the evidence reveals only that Griffin was unsatisfied with the work while Clark felt entitled to the total amount of the check for his services.

Accordingly, we find MTB is liable to Clark for the value of his repair work due to its conversion of the $4,180 check. Because we find liability without sufficient facts before us to determine the amount of liability, the correct course is for us to remand this case for a trial on damages. *Read v. Malone* (1978), 176 Ind.App. 497, 376 N.E.2d 494; *Daly v. Nau* (1975), 167 Ind.App. 541, 339 N.E.2d 71, *trans. denied; Bob Anderson Pontiac, Inc. v. Davidson* (1973), 155 Ind.App. 395, 293 N.E.2d 232, *trans. denied.* It is necessary for the trial court to determine the value of services received by Griffin to fix the amount for which MTB is liable to Clark.

■ Furthermore, we cannot decide Griffin's liability based on his forgery of Clark's signature for the very same reason. As between copayees, Clark's damages are measured by his interest in the property. *Carson v. Hanawalt* (1912), 50 Ind.App. 409, 98 N.E. 448. Clark's interest in the check proceeds is equivalent to the value of services performed for Griffin pursuant to their agreement.

Judgment reversed and remanded for a trial on damages. Costs against appellees.

NEAL and ROBERTSON, JJ., concur.