Gail W. **ALLREAD**, Appellant–
Defendant,

v.

**STATE** of Indiana, Appellee.

No. 90A02–9012–CR–00729.

Court of Appeals of Indiana,
Second District.

Dec. 18, 1991.

Wendell L. Ham, Jr., Bluffton, for appellant-defendant.

Linley E. Pearson, Atty. Gen., and Michael Gene Worden, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Appellant Gail W. Allread (Allread) was convicted of nine counts of theft, a Class D felony. He presents three issues upon appeal:

1) Whether the trial court improperly restricted the scope of cross-examination by granting the State's *Motion in Limine* preventing him from developing his defense of duress during the State's case-in-chief;

2) Whether he was properly sentenced for nine counts of theft based upon nine checks written from an escrow account; and

3) Whether he was denied an opportunity for a fair trial by a juror's failure to disclose that Allread's counsel was representing the juror's wife in divorce litigation at the time of the trial?

We affirm.

Allread was a real estate agent at Town & Country Realty (Town & Country). He had owned the business, but he sold it to Terry Troxel (Troxel) and remained on as an associate. Part of the business included referring home buyers to Star Construction, Inc. (Star Construction), a builder, for which Town & Country received commissions.

Allread received four checks for a total of $39,000 from two Town & Country clients who were having their homes built by Star Construction. He was supposed to forward the money to Star Construction.

Allread put the money in a Town & Country escrow account at Standard Federal Bank (Standard) which he had used when he owned Town & Country. Troxel did not know of the existence of the account, nor did he know that Allread had received the funds from the clients. Allread drew on the escrow account with nine checks. The amounts drawn were deposited into two personal accounts.

Allread was tried for nine counts of theft, one for each check written out of the escrow account. A first trial resulted in a hung jury. A second trial resulted in a mistrial. Before the third trial, the prosecution submitted a *Motion in Limine* to exclude references to a defense of duress during the prosecution's case-in-chief. The court granted the motion and restricted cross-examination with respect to the issue of duress. Allread was allowed to call all relevant witnesses and pursue his defense during his own case-in-chief. The jury convicted on all nine counts of theft.

I.

Allread first asserts that the trial court erred in preventing him from cross-examining the State's witnesses as to his defense of duress during the State's case-in-chief. He contends that the limitation violated his rights to cross-examination and a fair trial.

A trial court is allowed wide discretion in the conduct of cross-examination, and will be reversed only for an abuse of that discretion. *Thompson v. State* (1990) 2nd Dist. Ind.App., 555 N.E.2d 1301, 1303. The general rule is that cross-examination must lie within the scope of the direct examination. *Hudgins v. State* (1983) Ind., 451 N.E.2d 1087, 1090.

Allread complains that his cross-examinations of three witnesses, Terry Troxel, the owner of Town & Country, Ron Wimmer, the vice-president of Old–First National Bank, and Brooks Mounsey, a deputy sheriff, were restricted. However, none of these witnesses' testimony related to Allread's claim of extortion and duress.

Troxel was questioned as to the accounting and banking procedures he employed at Town & Country, the contracts leading to the four checks given to Allread, and his lack of knowledge as to the existence of the checks and the Standard Federal escrow account. In fact, Allread was allowed to conduct some cross-examination on the claim of extortion and duress, even though it was outside the scope of the direct exam-

ination and in violation of the *Motion in Limine.* Furthermore, Allread called Troxel during his case-in-chief and fully examined him with regard to the circumstances giving rise to the alleged defense.

Wimmer testified only as to Allread's bank accounts and his business relationship with Allread. Allread was not allowed to cross-examine Wimmer on the duress issue at this time; however, he called Wimmer as a defense witness and thoroughly examined him on the defense at that time.

Mounsey testified as to his investigation of the case. He stated that Allread admitted to obtaining the four checks in question. He was cross-examined as to the checks, but not as to the extortion and duress claim. Mounsey did not testify as a defense witness; however, there is no indication in the record that he was unavailable or that Allread attempted to call him.

In addition to Troxel and Wimmer, Allread presented four witnesses who testified as to the circumstances underlying the defense during his case-in-chief. The record thus reveals that Allread had an adequate opportunity to present his defense and did in fact do so. Under these circumstances there was no error committed with respect to the cross-examination.

### II.

■ Allread contends that the trial court erred in considering his conviction on nine counts of theft as an aggravating factor in sentencing. He asserts that the thefts occurred when he deposited each of four checks into a Town & Country escrow account known only to him and not when he transferred the money in nine checks from the escrow account to his personal accounts. On this basis, he concludes that he could have been guilty of no more than four counts of theft.[1] Allread's entire argument in support of this conclusion is that the statutory definition of "exert[ing] control over property" found in I.C. 35–43–4–1(a) (Burns Code Ed.Supp.1991) is consistent with the theory that the theft occurred

at the moment when the four checks were deposited.

The State might have charged Allread with theft upon the basis of the theory which he now proposes, but it did not do so. Upon appeal, we are not at liberty to review charges which might have been brought against a defendant and their likelihood of success at trial, except to the extent that they affect the outcome of the case which *was* presented or which involve fundamental error. We review only the charges which were made and the convictions which were rendered in the particular case. Ind. Appellate Rule 4(A). Thus, the question for our review is whether the evidence was sufficient to sustain the nine counts of theft as charged.

Allread deposited four checks from clients into an escrow account which was known only to him. Then, he transferred the funds from the escrow account into his own personal accounts. In finding Allread guilty of theft each time he withdrew funds from the escrow account, the jury must have assumed that the funds were not already stolen at the time they were deposited into the escrow account, for a person can not be guilty of theft from himself. *See Johnson v. State* (1973) 2d Dist., 158 Ind.App. 611, 304 N.E.2d 555. Similarly, one who has already deprived the rightful owner of property may not be held to have subsequently stolen the same property from the same owner unless it had been restored to the rightful owner during the interim. Thus, in determining whether the evidence is sufficient to uphold the jury's finding of guilt upon all nine counts, we must determine whether the theft of the funds was complete as a matter of law when Allread deposited them into the escrow account.

I.C. 35–43–4–2(a) (Burns Code Ed.Supp. 1991) defines Theft as follows:

"A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of

---

1. Allread presents his argument as a challenge to the propriety of the sentencing. Since we find that he was properly convicted on all nine counts, however, we need not specifically address the sentencing proceedings.

its value or use, commits theft, a Class D felony."

The facts of this case do not present a strong enough showing upon the element of intent to support the conclusion that Allread was guilty of theft as a matter of law when he deposited the money into the Town & Country escrow account. Had he transferred the funds to Star Construction without diverting them to his own personal accounts, there would have been no crime at all. We cannot say that Allread clearly intended to deprive Star Construction of the value or use of the $39,000 before he drew on the escrow account. Therefore, the State was entitled to pursue the theory that a theft occurred each time Allread wrote a check from the escrow account into one of his personal accounts, and the jury was entitled to act upon the assumption that the money was not stolen before that time. The evidence is sufficient to establish the elements of intent and unauthorized control and therefore Allread's assertion of error as to the nine counts is without merit.[2]

### III.

Finally, Allread challenges the verdict upon grounds of juror bias. He asserts that during the trial his counsel (Ham) was representing the wife of the jury foreman in divorce proceedings which included a custody dispute, and concludes that this fact must have biased the juror against him.[3] Allread first presented this issue in a motion for mistrial after the jury had rendered its verdict but before sentencing. The motion was denied after a hearing. He again raised the issue upon a motion to correct errors, which was denied. He now presents it upon appeal.

■ Allread urges us to adopt a rule which would grant a defendant a new trial upon a showing of a "mere possibility" of prejudice, citing the rule followed in some states as noted in "Juror's Nondisclosure of Relationship" 64 A.L.R.3d 126, 140–41.

However, our Supreme Court has established the rule in Indiana (also described in the A.L.R. note, at 141–42) which grants a new trial only upon a showing of serious misconduct upon the part of the juror which probably harmed the defendant. *Lopez v. State* (1988) Ind., 527 N.E.2d 1119, 1130. At a hearing with respect to juror bias, the burden is upon the defendant. *Martin v. State* (1989) Ind., 535 N.E.2d 493, 495. Furthermore, resolution of issues of juror bias lies within the sound discretion of the trial court. *Lopez, supra.*

■ At *voir dire*, the trial court asked the jurors collectively if they had ever used Ham personally as their lawyer, to which the foreman simply did not respond. Neither the trial court nor Allread's counsel asked the foreman whether he had ever *opposed* a party represented by Ham. Allread asserts that the foreman was under an obligation to disclose that his wife had retained Allread's counsel without being directly asked. Even were we to hold that the juror had a duty to disclose information not directly sought in *voir dire*, we would not conclude that such a failure rises to the level of misconduct sufficient to require reversal.

Furthermore, Allread does not demonstrate that the circumstances probably prejudiced the defendant. Allread does not present any argument or proof on the issue. Instead, he simply maintains that the juror may have been biased. His most detailed development of the contention is in his motion to correct errors, wherein he states:

"[T]the Jury Foreman had the [dissolution] action dismissed during the trial of this cause.... This has to constitute irregularity in these proceedings which denied Defendant a fair and impartial trial, and must be determined to be misconduct of a juror in view of the Voir Dire questions and answers to Counsel and the Court." Record at 358–59.

It appears that the trial court did not conduct an *in camera* interview of the

---

**2.** We express no opinion as to whether Allread's deposit of the funds into a Town & Country escrow account known only to him and not to the owner of Town & Country constituted "un-

authorized control", as defined by I.C. 35-43-4-1(a) (Burns Code Ed.Supp.1991).

**3.** It would appear that counsel was unaware of the relationship.

juror. We recognize that a defendant may be unable to develop a theory of juror bias without an adequate opportunity to examine the juror. However, the allegation here at issue concerned a case in which Allread's counsel served as attorney. Although Ham states in his brief that the divorce proceedings involved a "spirited custody dispute", there is no further development of facts clearly within Ham's experience to warrant a finding of actual prejudice at this late stage of the proceedings.

We have held in the context of a trial judge's bias that a judge need not disqualify himself merely because he has made an adverse ruling against a defendant in a related action, *Stanger v. State* (1989) 1st Dist. Ind.App., 545 N.E.2d 1105, 1118, or because he has participated in the prior trial of a co-felon *Jones v. State* (1981) 1st Dist. Ind.App., 416 N.E.2d 880, 882. *See Code of Judicial Conduct* Canon 3 C(1)(a). We find this authority applicable by analogy to the issue presented here. The mere fact that Ham represented the juror's wife in divorce proceedings is insufficient to establish that the juror was prejudiced against Ham. Even if Allread could show that the juror was biased against Ham, there is no evidence whatsoever to suggest that he was likely to vent his prejudice against Ham's client. The judge specifically asked the juror in *voir dire:*

"Q. Do you believe that you could listen to all the facts as they are presented through the various evidentiary devices and reach a verdict solely upon what you see and hear in this Courtroom?

MR. SCHLICTER (Juror): Yes, sir."
Record at 593.

There was no abuse of discretion in the trial court's refusal to grant Allread a new trial upon this ground.

The judgment is affirmed.

BUCHANAN and STATON, JJ., concur.